IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | 8:02CV388 |
| Plaintiff | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court for resolution of the issue of subject matter jurisdiction. The court ordered briefing on jurisdictional issues. Filing No. 63. The court has reviewed the parties' submissions and finds as follows.

## I. BACKGROUND

The dispute between the parties arises as a consequence of consolidation and mergers in the railroad industry. The undisputed evidence shows that from 1982 to 1996 plaintiff Union Pacific Railroad Company ("UP") purchased or merged with several railroads: (1) Missouri Pacific Railroad ("MoPac"); (2) Missouri-Kansas-Texas Railroad ("MET"); (3) Chicago & North Western Transportation Co. ("CAW"), (4) Southern Pacific Railroad ("SoPac"), and (5) Denver Rio Grande and Western ("DRGW"). Filing No. 33, Declaration of Rick Wehrli ("Wehrli Decl.") at 2. These mergers were authorized by the Interstate Commerce Commission ("ICC") and its successor, the Surface Transportation Board ("STB"). *Id.* at 1.

For some time after the mergers, the acquired carriers and the original UP and the Brotherhood of Maintenance of Way Employees ("BMWE or "the Union") continued to

operate under separate collective bargaining agreements ("CBAs") applicable to each formerly separate railroad.  *Id.* at 3.  Under these separate former collective bargaining agreements, the Union had a designated "General Chairman" or representative who negotiated on behalf of the Union and represented Union members with each of the different railroads.  *Id.* at 3-5.  The Union and UP later entered into agreements for the creation of consolidated system gangs that could operate across the territories of the former railroads' lines.  *Id.* at 4.  In 1996, a national agreement between BMWE and the major carriers required that BMWE and each carrier meet and update existing collective bargaining agreements in effect on the various individual carriers (such as the 1973 agreement on the former UP) in order to consolidate and incorporate various national agreement provisions, side letters, and memoranda of understanding into a single more usable document.  *Id.* at 4-5.  The Union contends that the updates were meant to be mere restatements of existing terms and were not intended to effect substantive changes.  *Id.*  Accordingly, the Union and UP entered into an agreement that became effective on July 1, 2001 (hereinafter, "the 1973/2001 Agreement").  *Id.* at 5.

Condensed to its essence, the dispute between the Union and UP is the question of whether or not the 1973/2001 Agreement permits or requires UP to negotiate with all of the general chairmen of each of the Union federations who represent the employees of the merged railroads (i.e., the General Chairmen for the Pacific Federation, Mountain and Plains Federation, and the CNW Federation) <u>as a committee</u>.  UP contends that the Union's designation of five general chairmen to administer the CBA violates the CBA, thereby working a unilateral change in the agreement in violation of the Railway Labor Act ("RLA").  UP also contends that the Union's designation amounts to bad faith bargaining

2

in violation of the RLA. UP asserts that it is entitled to an injunction maintaining the status quo while the parties pursue bargaining and mediation.

UP argues that this action involves a "major dispute" rather than a "minor dispute." It argues that BMWE has acted in bad faith, thereby violating its statutory obligation to take "all reasonable steps to make and maintain agreements" with UP. The Union, on the other hand, argues that the dispute involves its right to certification of its representatives and alternatively argues that if not found to involve certification, the dispute is minor. In the event that the dispute is determined to be minor, the Union seeks remand for arbitration.

## II. DISCUSSION

The burden of proving subject matter jurisdiction falls on the party asserting jurisdiction, in this case, UP. *See V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). This court has determined that the controversy between the parties is a post-certification controversy involving representation.[1] *See, e.g., Brotherhood of Locomotive Eng'rs v. Kansas City S. Ry.*, 26 F.3d 787, 795 (8th Cir. 1994). Under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, employer-union controversies are generally divided into (1) major disputes, which require the parties to undergo a lengthy process of bargaining and mediation during which the employer may not implement a contested change in working conditions; and (2) minor disputes, which are subject to compulsory and binding arbitration by an adjustment board. *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302, 305 (1989) ("*Conrail*"). A major

---

[1] As such, reliance on paragraphs Third and Fourth of § 2 of the RLA to support the contention that the controversy should be characterized as "major" are misplaced. *See Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants,* 489 U.S. 426, 440 (1989) (noting that paragraphs Third and Fourth of Section 2 of the RLA are part of the 1934 amendments, that have been viewed from the beginning "as addressing primarily the pre-certification rights and freedoms of unorganized employees").

dispute involves the creation of new contractual rights; a minor dispute involves the interpretation and enforcement of existing collective bargaining agreements. *Brotherhood of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638-639 (8th Cir. 2001). Minor disputes "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (quoting *Trainmen v. Chicago R.& I.R. Co.*, 353 U.S. 30, 33 (1957)). The court's jurisdiction over this claim depends on whether the dispute is a "major" or a "minor" dispute. *United Transp. Union v. Kansas City S. Ry.,* 172 F.3d 582, 585 (8th Cir. 1999). The distinction is important because this court lacks jurisdiction to resolve minor disputes. *See Martin v. American Airlines, Inc.*, 390 F.3d 601, 607 (8th Cir. 2004). The National Railroad Adjustment Board has "mandatory, exclusive, and comprehensive jurisdiction over minor disputes, and the remedies provided by the Board are the 'complete and final means' for settling minor disputes." *Jenisio v. Ozark Airlines, Inc.*, 871 F.3d 970, 973 (8th Cir. 1999) (quoting *Brotherhood of Locomotive Eng'rs v. Louisville & Nashville R.R.*, 373 U.S. 33, 39 (1963)).

There is no bright line rule for differentiating between major and minor disputes. *United Transp. Union,* 172 F.3d at 585-86. The issue is often a question of degree and is dependent on the facts in each case. *Id.* "In general, 'major disputes seek to create contractual rights, minor disputes to enforce them.'" *Id.* (quoting *Conrail*, 491 U.S. at 302). Major disputes involve questions relating to the formation of, or efforts to secure, labor agreements and acquisition of future rights, not to assertion of rights claimed to have vested in the past. *Id.* In contrast, minor disputes involve the interpretation of existing

4

agreements. *Sheet Metal Workers Int'l Ass'n v. Burlington N.R.R.,* 893 F.2d 199, 202-03 (8th Cir. 1990).

A dispute that is arguably justified by the terms of the CBA is minor. *See United Transp. Union v. Kansas City Southern Ry.*, 172 F.3d 582, 585-86 (8th Cir. 1999). Under the RLA, it is not the role of the courts to decide the merits of the parties' dispute—the court's role "is limited to determining where the 'arguably justified' line is to be drawn." *Conrail,* 491 U.S. at 311.

In determining whether a dispute is arguably justified by the terms of the CBA, the court must consider the agreement, including the written collective-bargaining agreement and the parties' past practices. *Id.* (noting that because collective-bargaining agreements may include implied, as well as express, terms, it is well established that the parties' practice, usage and custom are significant in interpreting their agreement). Accordingly, a dispute that involves only implied contractual terms or past practices will not always be beyond the contemplation of a collective bargaining agreement. *See id.* at 311, 318-19; *Alton & Southern Lodge No. 306 Bhd. Ry. Carmen v. Alton & Southern Ry. Co.*, 849 F.2d 1111, 1114 (8th Cir. 1988)

The court need not interpret the terms of the agreement, however. *United Transp. Union,* 172 F.3d at 586. The purpose of the inquiry, rather, is to determine whether the case implicates a question of contract interpretation. *Id.* Once a court determines the terms of the parties' agreement, it must then determine whether the particular dispute is comprehended within that agreement. *Id.* This inquiry involves determining whether the assertion that the dispute implicates a question of contract interpretation is "not obviously insubstantial." *Id.* The burden to establish exclusive arbitral jurisdiction under the RLA is

5

relatively light. *Conrail,* 491 U.S. at 311. In fact, there is a presumption that disputes are minor and thus arbitrable. *See Jenisio*, 187 F.3d at 973 (holding that if doubts arise as to type of dispute at issue, court should construe dispute as minor); *Alton and S. Lodge No. 306*, 849 F.2d at 1113, ("[w]hen the surrounding circumstances are ambiguous, the courts favor construing disputes as minor").

The court concludes that the dispute at issue herein is arguably justified by the language of the CBA and the dispute is minor. *See Hawaiian Airlines*, 512 U.S. at 256 (holding disputes grounded in the CBA are minor). Resolution of the dispute will turn on the meaning of the CBA, based on the agreement and past practices with respect to designation of representatives by the Union. Accordingly, because this action involves a minor dispute, this court lacks subject matter jurisdiction. *See Jenisio*, 187 F.3d at 973-74.

IT IS ORDERED that this action is dismissed for lack of subject matter jurisdiction.

DATED this 12th day of September, 2005.

                              BY THE COURT:

                              **s/Joseph F. Bataillon**
                              UNITED STATES DISTRICT JUDGE